# IN THE UNITED STATES DISTRICT COURT
# FOR MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| CAJ HOLDINGS, LLC, | ) |
|     Plaintiff, | ) |
| v. | ) Case No. _____ |
| MELISSA ANN WRIGHT, | ) |
| JOEY WRIGHT, and WRIGHT | ) |
| TECHNOLOGY SOLUTIONS | ) |
|     Defendants. | ) |

## COMPLAINT

Plaintiff, CAJ Holdings, LLC (hereinafter "CAJ"), for its Complaint against Defendants, Melissa Ann Wright, Joey Wright, and Wright Technology Solutions ("Defendants"), states as follows:

## PARTIES

1. CAJ is a Tennessee limited liability company authorized to do business in the State of Tennessee.

2. CAJ is authorized to and does business as Cross Creek Clays ("CCC") at 3975 Jarman Hollow Road, Palmyra, Southwest of Clarksville, in Montgomery County, Tennessee. CCC operates a premier sporting clays club. CCC maintains a 7000 square foot state of the art clubhouse, two (2) 16-station sporting courses, an 8-station sub garage/beginner's course, a covered 5-stand, and Federation Internationale de Tir aux Sportives de Chasse ("FITASC") Parcourse practice fields.

3. Melissa Ann Wright is a citizen and resident of the State of Tennessee.

4. Joey Wright is a citizen and resident of the State of Tennessee.

5. At all times material hereto, Melissa and Joey Wright were married.

6. Wright Technology Solutions ("WTS") is owned and operated by Melissa and/or Joey Wright. WTS does not appear to be registered with the Tennessee Secretary of State. However, WTS is licensed with the Tennessee Alarm Systems Contractors Board under license # 2203. WTS does business in and around Clarksville, Tennessee, including at 1820 Mercantile Drive, Clarksville, Tennessee 37040. WTS is an instrumentality of, and is controlled by, Melissa and/or Joey Wright.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims set forth in this Complaint pursuant to 28 U.S.C. § 1331 because some of CAJ's claims arise from the Stored Communications Act, 18. U.S.C. § 2701, *et seq*. and Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. This Court has supplemental jurisdiction over CAJ's state-law claims pursuant to 28 U.S.C. § 1367.

8. This Court has personal jurisdiction over all Defendants under Fed. R. Civ. P. 4(k)(1)(A), Tenn. Code Ann. §§ 20-2-222(1) and 20-2-223(a), and Tennessee's conspiracy jurisdiction doctrine. Defendants have engaged in unlawful conduct within the State of Tennessee as alleged herein, including while working from CCC's offices in Montgomery County, Tennessee. All Defendants engaged in the conspiracy as further alleged below.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS

### BACKGROUND

2

10. For several years, Melissa Wright worked for CCC. For approximately two (2) years, Melissa Wright provided services as an independent contractor to CCC. As an independent contractor, Melissa Wright served as the Gun Club Manager, from and after August 3, 2020, for CCC.

11. CCC most recently compensated Ms. Wright based on certain percentages of gross revenue generated by CCC.

12. As Gun Club Manager, Ms. Wright was contractually obligated to use her best efforts to promote CCC's business. She had a duty of loyalty to do so. Moreover, an implied term of the contract between CCC and Melissa Wright was that she would use her best efforts to promote CCC and maximize its profitability. As Gun Club Manager, Ms. Wright was contractually obligated to manage the financial affairs, develop business, budget, and manage CCC's employees. Ms. Wright provided registration and scoring services for CCC's events.

13. While Ms. Wright served as Gun Club Manager for CCC, she caused CCC to acquire goods and/or services from WTS, Shoot Technology Systems, LLC ("STS"), and Mel Gunz, LLC, companies with which she and her husband were affiliated. WTS, STS, and Mel Gunz, LLC are instrumentalities of, and are controlled by Melissa and Joey Wright.

14. Ms. Wright caused CCC to obtain its phone service, computer services, and IT support from WTS.

15. Upon CCC's best information, knowledge and belief, Ms. Wright caused some or all of the goods and services to be obtained from WTS and/or STS on a "barter" basis by, in part, providing advertising on CCC's website.

16. Ms. Wright, through Mel Gunz, LLC, had rented shotguns, in direct competition with CCC's rentals of shotguns, from CCC's plan of business.

17. Ms. Wright, in direct competition with CCC, rented golf carts owned by her or her instrumentalities instead of equipment owned by CCC.

18. Ms. Wright caused equipment and/or lodgings owned by her or her affiliates to be leased to CCC customers, in preference to the equipment and lodging owned and/or operated by CCC.

19. Ms. Wright caused the overpayment of vendors with whom she was affiliated. Upon information and belief, Ms. Wright has a close, personal relationship with the owner/operator of Score Chaser, an entity that provides software tools to manage shooting tournaments. Upon information and belief, Ms. Wright caused CCC to pay Score Chaser an 8% fee, which was labeled as merchant services fees. Normal, customary charges for merchant services fees would have been 3% to 4%.

**MELISSA WRIGHT'S FAILURE TO ACCOUNT FOR MONEY GENERATED FROM THE 2022 SOUTHEAST REGIONALS EVENT AT CCC**

20. CCC conducted the 2022 Southeast Regionals, a FITASC event, in September 2022 (the "Event").

21. Ms. Wright oversaw many aspects of the Event, including solicitation and receipt of sponsorship funds and consideration, and was contractually obligated to provide an accounting therefor.

22. STS, as an instrumentality of Ms. Wright, provided all registration and scoring services for the Event and collected revenue generated by the Event. CAJ's payment to STS was calculated by subtracting the expenses reported by STS from the revenue reported by STS.

23. After the Event, questions arose concerning Ms. Wright's breach of her duties to CCC.

24. CCC has asked questions about the finances and/or sponsorships of the Event. The explanations by Ms. Wright have either been superficial or not forthcoming. For example, Ms. Wright failed to provide to CAJ any support that the expenses reported by STS for the event were actually paid.

25. Ms. Wright reported $123,575.00 of sponsorship revenue was generated for the Event (the "Event Sponsorship Revenue"). Ms. Wright reported that only $18,200.00 of the Event Sponsorship Revenue consisted of cash. The remaining value of the Event Sponsorship Revenue consisted of equipment, inventory, merchandise, or asset trades.

26. Despite requests by CAJ, Ms. Wright has refused to provide any evidence for CCC's receipt of sponsorship consideration for the Event.

27. Ms. Wright has failed to properly account to and pay over to CCC the net proceeds and/or profits of the Event, including sponsorship consideration concerning the Event. For example, Ms. Wright has failed to identify the underlying assets and the value of those assets that were subject to the asset trades used to generate a portion the Event Sponsorship Revenue. Additionally, Ms. Wright reported that sponsor contributed $20,000.00 worth of equipment, but Ms. Wright has failed to identify such equipment.

28. There are in excess of $100,000 in discrepancies in Ms. Wright's reports concerning the income and expenses to CCC for the Event.

29. Melissa and Joey Wright have admitted to owing the sum of $12,158.37 to CAJ.

**DEFENDANTS' UNAUTHORIZED ACCESS OF CAJ'S COMPUTER SYSTEM**

30. On or about October 11, 2022, Ms. Wright declared her resignation as Gun Club Manager of CCC.

31. After her resignation, and without authority, Ms. Wright accessed the CCC computers.

32. On October 16, 2022, at approximately 10:17 p.m., Ms. Wright, or someone acting on behalf of Ms. Wright and pursuant to her direction, "logged on" to the CAJ computer system:





33. Said "log on" was after her resignation as Gun Club Manager and after any authority to access CAJ's computer system had been expressly terminated.

34. Ms. Wright, with the assistance of her husband, Joey Wright, and/or their instrumentalities WTS and/or STS, then caused the computers to be "wiped clean." All the stored data was erased from the computers formerly utilized by Ms. Wright as Gun Club Manager. The data that was erased included, but was not limited to, stored membership data, passwords, emails, history, and sales data.

35. Contemporaneous with the unauthorized access to CAJ's computer system, Defendants terminated CCC's phone service, alarms system, email services, and CCC's Google presence.

## CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FEDERAL STORED COMMUNICATIONS ACT, 18 U.S.C. § 2701, *ET SEQ*. (AGAINST ALL DEFENDANTS)

36. CAJ incorporates the foregoing allegations as if fully set forth herein.

37. At all relevant times, the Stored Communications Act, 18 U.S.C. § 2701, *et seq*., was in full force and effect and governed the accessing of facilities where electronic communication services are provided

38. The Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et seq*., (the "ECPA") broadly defines an "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce. . . ." 18 U.S.C. § 2510(12). The Federal Stored Communications Act (the "SCA") incorporates this definition.

39. Pursuant to the ECPA and SCA, "electronic storage" means any "temporary storage of a wire or electronic communication incidental to the electronic transmission thereof." 18 U.S.C. § 2510(17)(A). This type of electronic storage includes communications in intermediate electronic storage that have not yet been delivered to their intended recipient.

40. Pursuant to the SCA, it is unlawful for a person to obtain access to stored communications on another's computer system without authorization. 18 U.S.C. § 2701.

41. On or about October 16, 2022, Defendants knowingly, intentionally, willfully, and without authorization, accessed a facility, including CAJ's computers, computer system, computer network and/or parts thereof, for the purpose of altering, damaging, destroying or

9

attempting to damage or destroy, or cause the disruption to the proper operation of CAJ's computers, computer systems, and computer network.

42. Alternatively, Defendants knowingly, intentionally, and willfully exceeded any authorization to access CAJ's facility through which electronic communication service is provided.

43. Defendants thereby obtained access to a wire or electronic communication while it was in storage in such system.

44. Defendants' actions violated the SCA, 18 U.S.C. § 2701 and give rise to a claim under 18 U.S.C. § 2707, including all relief and damages permitted by 18 U.S.C. § 2707(b)-(c).

## COUNT II: VIOLATION OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, *ET SEQ.* (AGAINST ALL DEFENDANTS)

45. CAJ incorporates the foregoing allegations as if fully set forth herein.

46. CAJ's computers and computer systems, including without limitation its computer servers, are used in interstate commerce or communication and are "protected computers" under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2). By way of example only, CAJ's computers are connected to and utilize the internet, and CAJ's employees utilize CAJ's computers and computer systems to communicate with business contacts across state-lines via electronic mail.

47. Defendants, directly or through their agents and/or instrumentalities, intentionally accessed CAJ's protected computers without authorization and/or in excess of authorization to observe, copy, download, print, collect or otherwise obtain confidential, private, trade secret and/or protected information and data for their benefit.

48. By accessing CAJ's protected computers to observe, copy, download, print, collect or otherwise misappropriate confidential, private, trade secret and/or protected information and data for their benefit, Defendants compromised and/or impaired the integrity of such information and data.

49. By the actions alleged above, Defendants, directly or through their agents and/or instrumentalities, knowingly and intentionally accessed CAJ's protected computers and knowingly caused the transmission of a program, information, code, or command, without authorization and/or in excess of authorized access, and as a result of such conduct, intentionally caused damage.

50. By the actions alleged above, Defendants, directly or through their agents and/or instrumentalities, intentionally accessed CAJ's protected computers without authorization and, as a result of such conduct, intentionally caused damage, recklessly caused damage, or simply caused damage as the term "damage" is defined in the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(8).

51. CAJ has been required to spend substantial time and money to investigate and respond to Defendants' access of CAJ's protected computers and computer systems, including, but not limited to, CAJ's employees' time to assess and respond to such actions and the retention of a computer forensic expert and other professionals to perform a forensic examination and assessment of the protected computers and computer systems. Such sums have exceeded $5,000.00.

52. Defendants' actions violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2) and 1030(a)(5), and CAJ is entitled to all damages permitted by 18 U.S.C. § 1030.

11

Case 3:23-cv-00056    Document 1    Filed 01/20/23    Page 11 of 16 PageID #: 11

## COUNT III: VIOLATION OF THE TENNESSEE PERSONAL AND COMMERCIAL COMPUTER ACT, TENN. CODE ANN. § 39-14-601, *ET SEQ*. (AGAINST ALL DEFENDANTS)

53. CAJ incorporates the foregoing allegations as if fully set forth herein.

54. Defendants, directly or through their agents and/or instrumentalities, knowingly accessed CAJ's computer system for the purpose of property for themselves by means of false or fraudulent pretenses.

55. Defendants, directly or through their agents and/or instrumentalities, intentionally and without authorization, altered, damaged, destroyed data which resides or exists internal or external to CAJ's computer, computer system, or computer network

56. Defendants, directly or through their agents and/or instrumentalities, intentionally and without authorization, performed acts which are responsible for the disruption of CAJ's computers, computer system, and computer network.

57. Defendants' actions violated the Tennessee Personal and Commercial Computer Act, Tenn. Code Ann. § 39-14-602, and CAJ is entitled to all damages permitted by Tenn. Code Ann. § 39-14-604.

## COUNT IV: BREACH OF CONTRACT (AGAINST MELISSA WRIGHT)

58. CAJ incorporates the foregoing allegations as if fully set forth herein.

59. CAJ and Ms. Wright formed an implied contract, pursuant to which Ms. Wright was obligated to use her best efforts to promote CCC's business, maximize CCC's profitability, develop business for CCC, and manage CCC's financial affairs, budget, and employees.

60. CAJ and Ms. Wright demonstrated they mutual assent to this implied contract through conduct over several years by Ms. Wright's service to CCC as the Gun Club Manager and CCC's compensation to Ms. Wright.

61. Ms. Wright has breached the implied contract with CAJ by:

   a. Failing to properly account for all of the revenue, receipts, and expenses for the Event, including more than $100,000 in discrepancies in the sponsorship consideration for the Event;

   b. Failing to properly account to and pay over to CCC the net proceeds and/or profits of the Event;

   c. Causing the overpayment of vendors with whom she was affiliated, including but not limited to, Causing CCC to pay "Score Chaser" an 8% fee, when normal customary charged would have been 3% to 4%;

   d. Renting shotguns through Mel Gunz, LLC, an instrumentality of Ms. Wright's, in direct competition with CCC's rental of shotguns;

   e. Renting golf carts owned by her or her instrumentalities in direct competition with CCC instead of renting equipment owned by CCC;

   f. Leasing equipment and/or lodgings owned by her or her instrumentalities to CCC's customers in preference to the equipment and lodging owned and/or operated by CCC.

62. CAJ has been damaged as a result of Ms. Wright's breaches of the implied contract with CAJ.

13

### COUNT V: CONVERSION (AGAINST MELISSA AND JOEY WRIGHT)

63. CAJ incorporates the foregoing allegations as if fully set forth herein.

64. Melissa and Joey Wright have wrongfully appropriated CAJ's property, including proprietary business information and revenue from the Event, for their own use and benefit, exercising dominion and control over such property in defiance of CAJ's rights.

65. Melissa and Joey Wright have refused to remit the amounts admittedly owed to CAJ as they appear to be withholding the admittedly owed sums as ransom for debts allegedly owed to third parties, which may include WTS and STS.

66. CAJ has been damaged as a direct and proximate result of Melissa and Joey Wrights' unlawful conduct, and the harm from these acts continues despite mitigation efforts.

### COUNT VI: CIVIL CONSPIRACY (AGAINST MELISSA AND JOEY WRIGHT)

67. CAJ incorporates the foregoing allegations as if fully set forth herein.

68. Melissa and Joey Wright have acted collectively with a common design.

69. Melissa and Joey Wright took concerted action to achieve multiple unlawful purposes.

70. As set forth above, overt acts were taken in furtherance of Melissa and Joey Wright's conspiracy, with a majority of those actions being taken in Montgomery County, Tennessee.

71. CAJ has been damaged as a direct and proximate result of Melissa and Joey Wright's unlawful conduct, and the harm from these acts continues despite mitigation efforts.

### COUNT VII: AIDING AND ABETTING (AGAINST JOEY WRIGHT)

72. CAJ incorporates the foregoing allegations as if fully set forth herein.

73. Joey Wright knew that one or more of the other Defendants were breaching their duties owed to CAJ.

74. Mr. Wright gave substantial assistance and/or encouragement to one or more of the other Defendants in harming CAJ.

75. Mr. Wright engaged in affirmative conduct in furtherance of Defendants' unlawful activities against CAJ.

76. CAJ has been damaged as a direct and proximate result of Melissa and Joey Wright's unlawful conduct, and the harm from these acts continues despite mitigation efforts.

**WHEREFORE, CAJ HOLDINGS, LLC PRAYS FOR RELIEF AS FOLLOWS:**

a) For a judgment in favor of CAJ Holdings, LLC against Defendants for compensatory damages as a result of Defendants' wrongful conduct;

b) For a judgment in favor of CAJ Holdings, LLC against Defendants for punitive damages as a result of Defendants' willful, malicious, and/or reckless misconduct;

c) For all relief and damages permitted by 18 U.S.C. § 2707(b)-(c), including, preliminary and other equitable or declaratory relief as may be appropriate, money damages, and reasonable attorney's fees and other litigation costs reasonably incurred by CAJ Holdings, LLC;

d) For all relief and damages permitted by 18 U.S.C. § 1030, including compensatory and injunctive relief or other equitable relief;

e) For all relief and damages permitted by Tenn. Code Ann. § 39-14-604, including loss of profits.

f) For interest, both pre-judgment and post-judgment; and

g) For such other further and general relief to which CAJ Holdings, LLC is entitled.

Respectfully submitted this 20th day of January, 2023.

*/s/ William R. O'Bryan, Jr.*
William R. O'Bryan, Jr. (BPR #05433)
Y. Larry Cheng (BPR #36707)
BUTLER SNOW LLP
150 Third Avenue South, Suite 1600
Nashville, TN 37201
Phone: (615) 651-6700
Fax:    (615) 651-6701
Bill.obryan@butlersnow.com
Larry.cheng@butlersnow.com

*Attorneys for CAJ Holdings, LLC*